21-1779. Mr. Jacobs. Thank you, your honor, and may it please the court. My name is Brian Jacobs. I represent William Bazemore on appeal. I did not represent him below. This court should vacate his conviction and reverse the district court's denial of Mr. Bazemore's motion to withdraw his guilty plea. The district court abused its discretion because the plea was not voluntary. It was not knowing and intelligent, where prior counsel gave erroneous legal advice. In particular, Mr. Bazemore was offered two alternative pleas, one to sex trafficking, one to crime involving drugs and guns. Both carried a 15-year mandatory minimum. The sex trafficking plea carried additional collateral consequences, namely as a sex offender. However, Mr. Bazemore's attorneys advised him that if he pled guilty to sex trafficking, he may be able to argue that that was not a crime of violence under the burgeoning case law under the Davis case. His guidelines with a crime. So was I wrong? I mean, you know, a career offender is either someone who commits a crime of violence or a drug trafficking offense. And we have a crime of violence. So there is an argument that that would not count as a crime of violence, right? And that is an argument that wouldn't apply to the drug trafficking offense, isn't it? I'm sorry, Your Honor, if I'm misunderstanding. There is an argument that it does not qualify as a crime of violence. I know it's an open question in our court, but other courts have said that it's not, right? That it's not a crime of violence. Correct. And if it is not a crime of violence, then Mr. Bazemore would not qualify as a career offender. So when his lawyers told him that you could possibly make this argument for the sex trafficking offense, but not the drug trafficking offense, that was correct advice, was it not? That was correct, except that the plea agreement that they were having him sign waived that argument. And that's what makes it incorrect advice. It's correct. Yeah, but wasn't the advice they gave, you know, it's a long shot, but maybe we'll have an opportunity to make an argument at sentencing about that it's not really a crime of violence if the district court invites further argument on this point. What makes the advice incorrect, Your Honor, is that the plea agreement that he was signing waived the argument. They would not be able to argue it even as a long shot at sentencing. They would be barred. I'm interested in your concession or conclusion as to the efficacy of the plea waiver as to the challenge to the career criminal designation. Have we actually resolved the question of whether the plea waiver bars a challenge post sentencing? Your Honor, the relevance of the career offender enhancement here is that it was a guidelines enhancement that increased the guidelines range from roughly 15 years up to roughly 22 to 27 years. The defendant, if he were to go to court and argue that guidelines enhancement does not apply, that would be a breach of the plea agreement. Whether the court would permit that and what the consequences of that breach would be, I think, are not clear. But that would have been a breach of the plea agreement. The plea agreement and the government could potentially have seeked to void the plea agreement based on its plain language. But it sounds like we're on the same page that there's actually a lack of clarity as to what the consequences would be. Had he taken the other plea, there wouldn't have been an argument, and we know that there wouldn't have been a possibility of a more favorable outcome in the long run. Here, there's probably not, but maybe. If he had pled guilty to the drug trafficking offense, he would have been deemed a career offender under the plea, but he would not have had the collateral consequences that accompany the sex trafficking plea. He took the sex trafficking plea, based on the record here, because he thought, well, I'll be able to argue at sentencing as my lawyers— There wouldn't have been an argument available to him at sentencing. Correct. So he accepted the more severe collateral consequence in the hopes that he could argue— Didn't the lawyers tell him you can just argue this at sentencing? Didn't they say there's a possibility that the district court might—there might be further legal developments, the district court might want more argument on these points, and then there might be an opportunity to raise this argument with respect to the sex trafficking charge that wouldn't be available with respect to the drug trafficking charge? I mean, that's much more—that's describing it as more of a long shot than saying you definitely can make this argument at sentencing. Your Honor, first off, the language about long shot was really Mr. Epstein testifying what he told subsequent counsel, not necessarily what he told Mr. Bazemore. But what— But this point about maybe the district court would invite further argument at sentencing on this point, and then we'd have an opportunity. It doesn't say you're guaranteed an opportunity. It just means that there's a chance. Well, Ms. Sachs testified— Actually, before we get to what they testified, is that accurate? I mean, the district court, you know, gets to decide on its own sentence. So the district court could look at the offense and decide this is not a crime of violence, and so I'm going to sentence it differently than the plea agreement requires, right? Your Honor, you're correct that a district court has to make an independent guidelines calculation. The district court is not bound by the plea agreement for sure. However— There was some possibility if the district court was interested in this point that it could take further argument on this question. That's correct. But if the district court did not ask any questions about it, as is commonly the case where there's a plea agreement with the government and a recommendation from the probation office, Mr. Bazemore would be barred by the plea agreement. He waived this argument in the plea agreement. And what the testimony was from Ms. Sachs was we did say that there was a potential to later argue under Davis that it wasn't a violent crime. That potential did not exist. They waived that argument. Mr. Epstein said we told him it was an issue that could be raised in the— Wasn't that before the plea agreement? In other words, they provide him with this advice. They say, here are your options. They say there's a possibility. And then they advise him to plead guilty pursuant to a plea agreement. What is—where do you assign error? So there are many times, Mr. Chase, as you know, when you provide an array as a lawyer of options that are available to your client. But then you make—you provide advice by way of an ultimate conclusion. This is maybe the best thing for you because the risks involved with respect to the other approaches or the likelihood of success with respect to the other approaches are too high or too low, depending on what you're telling them. Why do we assign ineffective assistance to that timeline? In other words, there's a very low probability that you prevail, so we think that you should plead guilty pursuant to this plea agreement because the government may not agree to the plea agreement. It may take it off the table. Your Honor, the advice, as I understood it, that lawyers were describing at the hearing having given was advice in connection with the two plea offers. Ms. Sachs specifically says we got these two plea offers from the government. One was to sex trafficking. One was to drugs and guns. And in connection with the sex trafficking offer, we did say, hey, you may be able to argue it's not a violent crime. That was not true. That was inaccurate legal advice because, in fact, the offer entailed a waiver of that very argument. I think you just said a moment ago it's true to some extent. It's just that the potential is very small because the potential relies on the district court being interested in the question and inviting further argument. But if the district court does not ask further questions, you would not be able to make the argument, right? Your Honor, that is the argument the government makes, and it's brief. But in practice, that is virtually never what unfolds. And what he was advised was that you will be able to make this argument. There was a precondition on that, though, the district court inquiring, an event that simply does not happen with any – So you're saying that because they didn't inform him of exactly how slim it was or that it required this precondition that probably would not happen, it becomes erroneous advice. Correct, Your Honor. It's not an available – Was he informed about the possibility or the requirement of registering as a sex offender? Did he know about that in advance? Your Honor, I believe the record from the hearing suggests that he was aware of that, and that was why he chose – but notwithstanding that risk – Because he cared more about the sex offender designation. I'm sorry, the career offender designation. Correct, Your Honor, because that would reduce the guidelines from in the 27-year range down to the 15-year range, which was enormous. He really didn't end up getting anything out of this plea, as in the Johnson case, where he ends up getting sentenced to 27 years. I see I'm out of time. I'm happy to respond to further questions, but I'll reserve time for rebuttal. Thank you. You had me fooled a little bit that you were on this side, Mr. Jacobs. I'm used to seeing you on the other side. I'm happy to walk around. Can't do that. May it please the Court. My name is Danielle Sassoon, and I represent the United States on appeal, as I did before the District Court. I want to make what I think is an important factual clarification. Although there was plea discussions about two potential plea offers, there was only one written formal plea offer here, which I do think is important to the analysis, both in terms of ineffective assistance and potential prejudice. Turning to the arguments, first, there was no ineffective— I'm sorry. Why does that make a difference? Because there actually was not going to be a plea agreement based on the drug trafficking charge? There is an assumption here that he absolutely had this alternative option and therefore was prejudiced because he would have otherwise taken this other plea. I don't think the record supports that because there was no other written offer, and the prejudice analysis here should be that there's no evidence that he otherwise would have proceeded to trial. This idea that he otherwise would have entered into this alternative plea is speculative. There was no written offer. In the ineffective assistance context, generally when there's an assertion about ineffective assistance with respect to a plea, the question is, would he have proceeded to trial? No, the question is, is there a reasonable probability that it would have been a different outcome, and usually that's would he have proceeded to trial, right? But if there's evidence, whether it's written or not, that there was a reasonable possibility of an alternate plea, isn't that in the mix for the prejudice analysis? So I don't believe Appellant Saint's any case where there was prejudice because the defendant showed that he would have taken a different plea. Here, had there been a firm, formal, written offer to something else, perhaps that would be part of the analysis, but on this record, there's no basis to conclude with any certainty that he would have accepted this other speculative plea. And certainly if this court- Well, his testimony, right? I mean, he said I would have. Well, if this court were to determine that counsel is ineffective, which we submit counsel was not, at the very most, we submit that it would be appropriate for a remand so that the government could offer evidence with respect to the plea negotiations, that there be an opportunity to cross-examine the defense attorneys and the defendant because the government was not part of developing the record with respect to the alternative plea. But there was no ineffective assistance here. Judge Menasche, as you touched upon, there were no extra contractual promises to induce the defendant to plead, which might have made his plea involuntary. At most, there was vague advice that perhaps sometime down the road, not necessarily at sentencing, this argument could be raised. And I resist the assertion that this virtually never happens. For example, had there been an intervening Supreme Court decision or Second Circuit decision saying that sex trafficking was not a crime of violence, this definitely would have come to the district court's attention. And certainly the defense would have noted this case, and perhaps even the government in that type of context might make a concession to the district court that would have affected the district court's calculation of the relevant guidelines. This is something that does happen from time to time, particularly if there is an intervening decision, and it was not far-fetched to suggest that that could happen given the recent Davis decision and the case law coming out of other circuits on this topic. In addition, Judge Torres was correct to reject the idea that even had the defendant received this advice, that that was the reason that he entered this guilty plea. And that's for a number of reasons. First, the Rule 11 preceding his guilty plea, he made statements under oath at the time that there had been no promises apart from the plea agreement to induce him to plead guilty, that he was waiving the right to appeal a sentence at or below 327 months, that he was satisfied with his attorneys. And that, as the case is recognized, carries a strong presumption of credibility. That combined with the fact that his attorneys only said that this was a long shot, the idea that that would be the basis for him to enter a plea when he was given this indeterminate speculative advice, also is not credible. And there are cases... Well, there's indeterminate speculative advice that it's a possibility, but that being registered as a sex offender is a definite consequence. I mean, doesn't he end up making a distorted decision? Because he doesn't know how slim a possibility it is. And so maybe his lawyers should have said, no, but you definitely will be on record as a sex offender, and that will be a much more important consequence. Even if he hung some hope on that, as I've mentioned, that argument was not completely foreclosed, and it was possible, and he decided what way to afford that possibility, but it certainly wasn't a promise. And this Court, in cases like Gonzalez and Ventura, has said that where a defendant, during his plea, conclusively says there were no promises that induced me to plead guilty, apart from what's in the plea agreement, that any other statements made by his counsel are not enough to undermine the voluntary nature of his plea, and that's Gonzalez and Ventura. On top of that, the defendant's testimony at the hearing was riddled with lies that could have reasonably informed Judge Torres' decision not to credit his claim that this was why he pled guilty. He lied that he didn't... My understanding is that she discredited his testimony almost entirely. Yes, and that was a reasonable conclusion, given that he claimed he had not seen his plea allocution and that it was sprung on him in court, even though his lawyers testified that they wrote it alongside him and prepared it with him precisely so that he would be comfortable with it at the plea. He claimed that he had barely reviewed the plea agreement, I believe, and he had also, before the hearing, in the government's view, deliberately muddied the record to undermine the finality of his plea. After the plea, the judge received this letter that had been sent before the plea hearing, and he didn't raise any of those concerns at the plea hearing itself, and in that letter and one of the intervening conferences, he claimed that his lawyers had not told him at all that sex trafficking was a crime of violence and that he hadn't seen this in the plea agreement, and then in his testimony at the hearing, he conceded that he had in fact seen the plea agreement, had in fact been informed that it was a crime of violence. So his claim was a moving target, and the fact that it was a moving target further supported Judge Torres' decision not to credit his self-serving claims to get out of his plea agreement. But isn't the argument that even taking only the testimony of the lawyers that she credited and perhaps the evidence of this e-mail from a different lawyer who says, yeah, you know, this sex trafficking argument is on the table as late as the spring following the plea, that that collectively reflected inaccurate advice even as the lawyers characterized it? But the idea that this was the basis for his plea when at his Rule 11 colloquy he specifically said he understood all the consequences of the plea agreement, had reviewed it, and was not relying on anything outside the four corners of the plea to enter the plea and was also knowingly waiving his right to appeal any sentence at or below 327 months belies this idea that he was banking on the fact that he was not going to be a career offender and was going to get a much more lenient sentence. I'm trying to think about how that boilerplate in the plea agreements, it says I'm not relying on any promises. Typically that means from the state relative to this plea. Does that, that could swallow up all ineffective assistance of counsel claims if the theory is, oh, well, he was relying on the advice of counsel, but yet he didn't say that in the plea allocation, or doesn't that? So in the Ventura case, and that's 957 F. Second 1048, I believe that case said that it's not reasonable to infer a defendant is still relying on conflicting prior representations by his own counsel if he makes these type of statements at a plea colloquy. And going back to Judge Lohier's questions earlier, I think that serves an important purpose, which is there's a dialogue between a defendant and his lawyers in making a decision about whether to plead guilty, what plea to enter, whether to go to trial, and if every aspect of that dialogue and strategy then can override the defendant's clear statements under oath at a plea hearing, that would undermine the finality. So if he, you know, entered his plea believing that he'd have an opportunity to raise the career offender argument at sentencing, that's not a promise that's made to him, that's just how he thought that the process was going to play out, right? That's correct. First of all, it's not... So it's not inconsistent to say, I'm not relying on any outside promises in entering this plea, but he is relying on his counsel's advice about how it's going to play out, right? Yes, and defendants often have hopes about how the sentencing is going to play out that don't render their plea involuntary. Here, Epstein said to him, this is a long shot, so it's unlikely to prevail, and he also said, I don't know when or how he can make this argument, so he didn't even commit that this was an argument that would happen at sentencing. It could be an argument that might come up in collateral proceedings, if there was a decision after sentencing that they wanted to raise in a 2255, but there was certainly not advice that was sufficiently concrete to render the plea involuntary. May I ask you just to switch topics about the virtual hearing? Yes, Your Honor. Mr. Jacobs did not raise that, so I'll give him an opportunity on rebuttal to maybe respond, but if this had been any other type of hearing, would the government acknowledge that it was error not to at least obtain Mr. Bazemore's consent to the hearing? Your Honor, even assuming that he had a right to be physically present, the record here is sufficient to show waiver, and I want to raise a few points that demonstrate waiver here. In cases like Jones out of the Second Circuit and Gagnon out of the Supreme Court, these cases have said that waiver can be implied if there's no objection before or after, even if the defendant is absent entirely. Was this, well, this is post-CARES Act, so this is the way that I view it, frankly, and maybe the answer is that the CARES Act doesn't apply to this particular type of hearing, but go ahead. So the CARES Act does not explicitly apply to this type of hearing, which I think suggests that at least Congress did not think of this as the type of proceeding that otherwise would require a defendant to be physically present, which I think shows that perhaps this is not the type of proceeding that requires physical presence. It's not covered by Rule 43, not covered by the Confrontation Clause, and arguably not by the Due Process Clause. But the defendant relies heavily on this case, Graydon, in support of his arguments, but that case actually says that a waiver can be by the defendant or by counsel. And here, counsel did a number of things that, at the very least, Judge Torres did not plainly err in concluding that it constituted waiver. They had waived presence at a number of other conferences. Judge Torres had previewed that this proceeding would be by videoconference. No one objected. The defendant was present when she said that. Then there were multiple orders, and defense counsel chose not to submit any objection, which arguably constituted consent to proceed by video. And then at the hearing itself, the defendant was there, and neither he nor his counsel objected. And Graydon also makes an additional important point, which is the government does not have to show that the defendant knew he had a statutory or constitutional right to be present. It's enough to show that there was minimal knowledge, meaning the defendant need only be aware of, quote, the nature of the proceeding, not the abstract existence of the right itself. Here, the defendant was actually present just by videoconference, and he plainly was aware. So I wonder if the CARES Act has changed that dynamic, and that that was a, because it requires a consent of the defendant. So, okay. Can I ask, everybody seems to agree that this was by videoconference. The transcript says it was by phone. I'm just curious, was the hearing, in fact, by videoconference? The government was not present at the conference, but it's my understanding, including based on appellant's representations, that it was by video. Okay. In part, too, because I believe that's what Judge Torres said on the record. That's the way that she describes it. She described it on August 13, 2020, at pages 100.3 to 100.4 of the appendix as a videoconference, and in both of her orders, and this is in appendix 101 and 105, she describes it as a videoconference. In addition, even if there were error, any error was not plain. First of all, there's no authority that this type of proceeding has to require the defendant's physical presence. And it was not clear error for Judge Torres to conclude that there was consent, given all of the facts that I've outlined, and the defendant was not prejudiced by proceeding by videoconference. He was able to testify, and Judge Torres's conclusions were supported by his demeanor at the Rule 11 colloquy. I just want to emphasize the importance of an open courtroom. I told the high school students who were here that this is an open courtroom, so in particular in connection with a criminal proceeding, it's important to make sure at least that the defendant has fully consented. But that's, we've got the benefit of the argument. We'll hear from Mr. Jacobs. And I appreciate the government. You were not there, but I'm talking about the government generally. Mr. Jacobs. Thank you, Your Honor. I want to address the video issue, but I just want to first respond to two quick points that Ms. Sassoon made. First, she made a point that there were no two plea offers. There was one plea offer. Ms. Sachs' testimony at page A128 of the appendix says, the government came to us with two separate plea offers, and then she describes the two offers. And so at least the testimony, which Judge Torres credited and which the government relies upon, suggests that the defense at least viewed it as two separate offers. Those are Ms. Sachs' words. Second, Yes, in determining the hypothetical of what he would have done, but for the advice, if there was only one written offer, it's not totally clear that he would have been able to do the first one. But maybe the government's just asking for more record development on that point. You're saying it's clear from the record we know he had the choice between the two alternative plea agreements? Your Honor, I'm saying at a minimum, remand is required for further development of the record. But the suggestion that there was only one plea offer is belied by the testimony. This goes into the second point I wanted to respond to, which Judge Robinson raised, which is that the government hangs its hat on this idea that Mr. Bazemore didn't establish he would have gone to trial. That is not the standard. Ms. Sassoon says we don't cite a case, but the Supreme Court conclusively determined this issue in Missouri v. Fry, 566 U.S. 134 in 2012, which is after the Arteca case the government relies upon, where the Supreme Court wrote, In a case such as this, where a defendant pleads guilty to less favorable terms and claims that ineffective assistance of counsel caused him to miss out on a more favorable earlier plea offer, Strickland's inquiry into whether the result of the proceeding would have been different requires looking not at whether the defendant would have proceeded to trial, absent ineffective assistance, but whether he would have accepted the offer to plead pursuant to the terms earlier proposed. So in the context of plea negotiations If you had a better plea and you forgo that, that might be sufficient. Right. And here we would submit that the drug trafficking plea, one of the two offers Ms. Sachs described, was better if the other plea, the sex trafficking plea, had been correctly described to Mr. Bazemore and he had been told you are not going to be able to argue, you are not a queer offender, and you are nevertheless going to suffer the more extreme collateral consequences. But that wouldn't have been accurate either, right? The lawyers can't predict the future. I mean, the advice that there is a possibility you'd get to argue this was accurate. It's just a slim possibility. I would say it is not a possibility absent further action by the district court of the sort that is virtually never taken by a district court. So if they had advised there is a possibility you could do this, but it is very slim because it depends on further action by the district court, that would have been accurate advice. That would have been accurate advice, Your Honor. If the testimony, I'm slightly puzzled by this focus on whether he could have made this argument at sentencing because as I read Attorney Epstein's testimony in the hearing, his advice was that in light of the burgeoning case law concerning the Davis case, it's an issue that could be raised in the future, although it was unclear when or how it could be raised. That suggests to me that he's not just thinking about the possibility of sentencing. In fact, it suggests to me he's looking further down the road to all sorts of post-conviction sorts of remedies. Why are we focused just on whether that advice is realistic as it relates to sentencing? Your Honor, the key to this inquiry as the cases in our brief show is what the defendant would have understood, not what an experienced lawyer who knows this area of law would have understood. And as far as Mr. Bazemore would have understood, the most likely place where any argument he's being told about could be raised is the next proceeding in his case, which is sentencing. Mr. Jacobs, hold on. Stop the clock for one second. I'll stop the clock in my own head. I'm mentally subtracting from the numbers. Okay. Proceed. Could he raise the argument in a collateral attack in the Hague's petition or something later? I think Mr. Bazemore certainly could raise the argument that his counsel was ineffective in a collateral attack. The record we would submit is fully developed for him to raise that argument here as we have. He could raise it at the ineffective assistance, but his point about that it was a mistake to sentence him because it was not a crime of violence. I don't believe he'd be – I believe the plea agreement and its waivers would preclude that. The plea agreement waives not only a direct appeal of a sentence that's at or below 327 months, but also a collateral attack. And so I believe that would be waived. And you said, Mr. Jacobs, that the inquiry really relates to what the defendant here thought. But here we have a hearing where the district court judge, Judge Torres, discredited his testimony and appears to have fully credited the testimony of his attorney. So what do we do there? Shouldn't we, based on the record and based on that finding, those findings, view it from the perspective of what the lawyers said? Your Honor, the question, and I believe this came up during the government's argument, even based solely on the lawyer's testimony, this record establishes that the advice given was inaccurate. The testimony doesn't say we advised him he'll be barred from arguing this at sentencing unless, you know, the unlikely event of the judge inquiring happens. But you may be able to argue it in some future event, which also he would not have been able to do because of the waiver and the plea agreement. The testimony is much more, we advised him this may be something you can argue. And the understanding of any defendant, on an objective basis, would be I'll be able to argue that at sentencing, regardless of whether Mr. Bazemore's testimony here was credited or not. Do they say that? Do the lawyers during the testimony say that? No. The lawyers say- You won't be able to argue this at sentencing. They say you'll be able to argue it. And the question is what is the objective- They say you may, well, maybe I'll check the language myself, but I thought it was much more tenuous than that. Would it be fair to say that they said, and under the elements analysis,  but that Mr. Bazemore knew that this was, in effect, a long shot and that he shouldn't base any decisions on it? Well, that was the testimony. Your Honor, I believe that's Mr. Epstein describing what he, to subsequent counsel, his view of the matter, rather than what he said specifically to Mr. Bazemore. It's him characterizing Mr. Bazemore's understanding. Right, he characterizes what Mr. Bazemore knew based on their communications. Correct. I think even that testimony encompasses the ability to make the argument at sentencing. It certainly is not clear from an objective standpoint, and a defendant objectively would have understood that to mean, I can argue this at sentencing. If I may, Your Honor, just briefly on the video point I want to highlight, the government, when Ms. Sassoon said the government wasn't present, I think she meant not only that she personally wasn't present, but also that the government as a party was not present at the hearing. There's the lawyers, his lawyers, and the judge. Correct. But it is notable that the order the district court issued twice was to the government and the defense and asked that they advise the court of their position on remote proceedings in both parties under the CARES Act, and both parties ignored that order twice. And so in terms of assessing whether there's a plain error here, both the government and defense ignored the court's order to weigh in on whether there was consent under the CARES Act, the fact that the CARES Act doesn't apply here suggests just the opposite of what Ms. Sassoon says. It suggests this is the kind of proceeding that has to be in person rather than that this is the kind of proceeding that can happen by video conference. Well, if the CARES Act had never come along, if COVID had never come along, under Rule 43, is it your position that A, has a right to be present, and B, it's a non-waivable right? Yes, Your Honor. This is a proceeding that relates to the fullness of the opportunity to defend against the charge. It is a proceeding that is a trial proceeding in the sense that his credibility is going to be assessed. Whether or not it's waivable, I think, is not the question here. He certainly doesn't consent to it and give a knowing and voluntary consent to it on the record. Whether it is something this Court can notice under plain error review, I don't... Well, I think your maybe better argument is that it's a form of structural error, not plain error. Correct, Your Honor. Under the Kennedy case, which I may be mispronouncing, I think this clearly qualifies as the sort of structural error that warrants reversal. Thank you very much. Thank you.